DAMIAN WILLIAMS
United States Attorney
Southern District of New York
By: PIERRE G. ARMAND
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2724
Email: pierre.armand@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CABOT SQUARE LLC,<br><br>Plaintiff,<br><br>v.<br><br>FULCRUM CAPITAL HOLDINGS LLC, MATTHEW HAMILTON, TIMOTHY HORRIGAN, FONDACO SGR S.P.A., COMPAGNIA DI SAN PAOLO, and CARAC,<br><br>Defendants. | 18 Civ. 9160 (VEC)<br><br>COMPLAINT-IN-INTERVENTION OF THE UNITED STATES OF AMERICA<br><br>JURY TRIAL DEMANDED |
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>FULCRUM CAPITAL HOLDINGS LLC,<br><br>Defendant. | |

The United States of America, by its attorney, Damian Williams, United States Attorney for the Southern District of New York, alleges for its complaint-in-intervention as follows:

## PRELIMINARY STATEMENT

1. This is a civil fraud action brought by plaintiff-intervenor the United States of America (the "United States" or the "Government") against defendant Fulcrum Capital Holdings LLC ("Fulcrum" or "Defendant"), an investment firm based in Austin, Texas, to recover damages and civil penalties arising from Fulcrum's violations of the False Claims Act (the "FCA"), 31 U.S.C. § 3729 *et seq.*, in connection with fraudulently obtaining remission payments from the Madoff Victim Fund (the "MVF").

2. The MVF was created by the United States Department of Justice ("DOJ" or the "Department") to compensate victims of the massive Ponzi scheme perpetrated by Bernard L. Madoff through a process called remission. The United States Attorney's Office for the Southern District of New York (the "SDNY") has provided funds to the MVF through civil and criminal asset forfeiture recoveries for pro rata distribution to Madoff fraud victims. To ensure equitable distribution of MVF funds, all claimants are required to disclose to the MVF any Madoff-related collateral recoveries they have obtained, meaning any monies received from sources other than the MVF, such as insurance, private lawsuits or settlements, the court-supervised liquidation of Madoff's firm, or proceeds from selling their Madoff-related investments and/or recovery rights to another party. To prevent MVF claimants from receiving duplicative recoveries, the MVF is required to reduce remission payments paid to claimants by the amount of any collateral recoveries they received.

3. Fulcrum purchased from multiple third parties who had submitted remission claims to the MVF their shares in Madoff feeder funds, as well as the claimants' rights to receive remission payments from the MVF. Because claims for remission cannot legally be assigned, these victims outwardly retained their status as MVF claimants, but privately agreed to promptly pass on any distributions they received from the MVF to Fulcrum.

4. When the MVF sent notices to the claimants requiring them to disclose, under penalty of perjury, any collateral recoveries they had received, Fulcrum directed the claimants to submit false collateral recovery update documentation to the MVF concealing the vast majority of the amounts that Fulcrum had previously paid them for the Madoff feeder fund shares and attendant rights and remission claims. As a result of this deception, the MVF paid the claimants larger recoveries than they should have received. The claimants then passed most of these amounts on to Fulcrum.

5. As a result of the foregoing conduct, Fulcrum violated the FCA, and submitted or caused to be submitted false claims for payment to the MVF.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the Government's claims under the FCA pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C §§ 1331 and 1345.

7. This Court may exercise personal jurisdiction over Fulcrum pursuant to 31 U.S.C. § 3732(a), which provides for nationwide service of process. Further, because Fulcrum transacts business in this District and, in furtherance of the fraud alleged, caused false claims or statements to be submitted to the MVF in this District, venue is proper in this District pursuant to 31 U.S.C. § 3732(a) as well as 28 U.S.C. §§ 1391(b) and 1391(c).

## PARTIES

8. Plaintiff is the United States of America. Through DOJ, the United States administers the MVF.

9. Defendant Fulcrum, a Delaware limited liability company, is an investment firm with its principal place of business in Austin, Texas.

## BACKGROUND

**A. The False Claims Act**

10.  The False Claims Act was originally enacted in 1863 to address fraud on the Government in the midst of the Civil War, and it reflects Congress's objective to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." *See* S. Rep. No. 99-345, at 1 (1986), reprinted in 1986 U.S.C.C.A.N. 5266.

11.  As relevant here, the FCA establishes treble damages liability to the Government where an individual or entity:

(A) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A); or

(B) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, id. § 3729(a)(1)(B).

In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or each false claim. "Knowing," within the meaning of the FCA, is defined to include a defendant acting in reckless disregard or deliberate indifference of the truth or falsity of information, as well as actual knowledge of such falsity by defendant. *See id.* § 3729(b)(1).

**B.   The Madoff Fraud, the Madoff Victim Fund, and the Remission Process**

13.  From as early as the 1970s through December 2008, Bernard L. Madoff perpetrated the largest Ponzi scheme in history, defrauding thousands of direct and indirect investors in Bernard L. Madoff Investment Securities LLC ("Madoff Securities") of billions of dollars (the "Madoff Fraud"). In March 2009, Madoff pleaded guilty to eleven federal felonies, including securities, mail, and wire fraud, and in June 2009, Madoff was sentenced to serve 150 years in prison and forfeit over $170 billion.

14.  The SDNY has recovered over $9 billion related to the Madoff Fraud through civil and criminal asset forfeiture proceedings.

15. In 2013, DOJ created the MVF to distribute certain funds forfeited to the United States related to the Madoff Fraud to victims pursuant to DOJ remission regulations, 28 C.F.R §§ 9.1-9.9 (the "Regulations"), and appointed Richard Breeden as special master to oversee the MVF and assist DOJ in connection with remission proceedings for victims of the Madoff Fraud.

16. From November 2013 through April 2014, the MVF received remission claims from tens of thousands of victims of the Madoff Fraud, and in November 2017, the MVF began making distributions to victims whose claims were approved by DOJ. To date, the MVF has made eight distributions to more than 40,000 approved claimants.

17. The MVF remission process is governed by the Regulations and the Plan of Distribution for the MVF approved by DOJ. The MVF has published the Plan of Distribution on its website in the form of answers to frequently asked questions since November 2013.

18. The Plan of Distribution and Regulations provide, among other things, that only victims of the Madoff Fraud are eligible to receive remission payments from the MVF, meaning that claimants must have lost their own money through the Madoff Fraud. Specifically, the Plan of Distribution states:

    a. To be eligible to participate in payments from the MVF, a person must be a "victim" of the fraud perpetrated through Madoff Securities. Any person who is not a victim of the Madoff fraud is not eligible to receive a payment of remission.

    b. Federal law defines a "victim" as "any person" who suffered a "pecuniary loss" as a "direct result" of crime. For purposes of the MVF, you qualify as a victim if you lost your own money as a direct result of investments that were rendered worthless by the Madoff fraud.

19. The Plan of Distribution further states: "A victim is the person or entity that suffered a pecuniary loss as a direct result of the criminality that gave rise to the forfeiture

5

of assets in this case. That status cannot be purchased or transferred; indeed, the forfeiture laws and regulations forbid it. You are either a victim or you are not." The Regulations similarly provide that purchasers of remission rights are not eligible victims. *See* 28 C.F.R. § 9.2 (a victim for purposes of remission is "a person who has incurred a pecuniary loss as a direct result of the commission of the offense underlying a forfeiture" and generally "does not include one who acquires a right to sue the perpetrator of the criminal offense for any loss by assignment, subrogation, inheritance, or otherwise from the actual victim").

20. The Plan of Distribution and Regulations further provide that victims may recover only their pro rata share of the net losses they incurred as a result of the Madoff Fraud, calculated on a cash-in, cash-out basis, and that any collateral recoveries the victim has received from any source other than the MVF must be deducted from the net loss amount. Specifically, the Plan of Distribution states:

    a.    It is your responsibility to establish to the satisfaction of the Ruling Official within the Department that you suffered a specific, net loss.

    b.    There is a limited amount of money to compensate an enormous group of victims, some of whom have not yet received a penny. So, no double dipping will be allowed, and no one is eligible to recover more than his or her actual "net loss" on a cash-in, cash-out basis.

    c.    The starting point in measuring your loss is all the cash you invested in Madoff Securities, less any cash you received back. This establishes the cash that was taken from you, less your recoveries during the years of the fraud.

    d.    Once your original "net loss" is known, the Department's regulations require all "collateral recoveries" you have already received, or that you will receive in the future, to be deducted from a claim for remission.

21. The Regulations generally require remission to be granted "on a pro rata basis … when petitions cannot be granted in full due to the limited value of the forfeited property," 28 C.F.R. § 9.8(f), and prohibit remission where the victim already has been "compensated for the wrongful loss" or has "recourse reasonably available to other assets from which to

6

obtain compensation for the wrongful loss," *id.* §§ 9.8(b)(4), 9.2(b)(5).  The Regulations further require any victim receiving remission payments to reimburse the United States "to the extent the individual later receives compensation for the loss … from any other source." *Id.* § 9.8(g).

22. The Plan of Distribution defines "collateral recoveries" broadly to cover any compensation a victim may receive from any source.  Specifically, the Plan provides:

> a. Collateral recoveries include any payments you received from the [Securities Investors Protection Corporation], all bankruptcy distributions (directly or through an intermediary) on all accounts you held, insurance or class action recoveries, or any other form of compensation you have received. You will have to certify under penalties of perjury the completeness and the accuracy of the disclosure of your recoveries to date.

23. The MVF has issued Collateral Recovery Update ("CRU") Notices to all eligible claimants in advance of each of its distributions.  Completion of the CRU form attached to the Notice or other updated collateral recovery disclosure is a condition precedent for being considered for a MVF distribution.  The CRU Notices make clear that all collateral recoveries must be disclosed and that collateral recoveries include compensation from any source, including proceeds from the sale of claims for Madoff recoveries.  For example, the CRU Notices provide the following:

> a. [I]f you HAVE received payment relating to your Madoff losses from your investment fund, from class action litigation, from bankruptcy distributions, from the sale of your claim, or from any other source, then you must update us on your recoveries.
>
> b. The reason MVF needs this information is simple. Federal law prohibits MVF from paying anyone more than their actual losses. In addition, the amount of your next payment will be a specific percentage of your eligible Madoff fraud loss LESS all prior recoveries. Without knowing your prior recoveries, we can't determine how much you should be paid.
>
> c. As with all prior MVF payouts, in order to be eligible for a payment you must complete a collateral recovery update.  If you are eligible for a … payment, the amount of your payment will be the distribution target recovery percentage of your approved fraud loss amount, less all prior recoveries from any source and previous MVF distributions. Therefore, MVF must ask you to update information on your total recoveries in order to calculate your potential payment.

24. From 2013 through the present, the MVF posted multiple notices on its website providing further clarification on what constitutes a collateral recovery and further explaining the importance of disclosing collateral recoveries to permit the MVF to properly calculate remission payments. For example:

    a. <u>August-December 2017 Update</u>: MVF previously sent you a collateral recovery update request explaining that: "Collateral recoveries include bankruptcy distributions, litigation recoveries, settlement proceeds, insurance recoveries, or any other compensation received for your Madoff losses." Essentially, anything you received from anyone due to your Madoff loss is a collateral recovery. In particular, you need to report to MVF all payouts from the Madoff bankruptcy, as well as any proceeds you received as a result of the sale or assignment of your claim in either the bankruptcy or MVF proceedings.

    b. <u>Spring 2018 Update</u>: MVF calculates individual victim payments based on what amount is required to bring an individual victim to a total percentage recovery of their eligible fraud loss, including all prior recoveries from other sources (sometimes called "collateral recoveries"). We describe that payout percentage… as the baseline recovery percentage, and it is likely to go up with each MVF distribution. Because the amount of recoveries from all sources received by a victim is part of the payment computation, every victim has been asked to provide periodic updates on their own recoveries from sources other than MVF. Absent disclosure of outside recoveries, some investors would be paid more than the recovery percentage being paid to everyone else.

### FACTUAL ALLEGATIONS

**Fulcrum Engaged in a Scheme to Fraudulently Obtain
Inflated Remission Payments From the MVF**

25. From at least October 2016 through October 2022, Fulcrum violated the FCA by fraudulently obtaining, as a non-victim of the Madoff Fraud, remission payments from the MVF to which it was not entitled. Specifically, Fulcrum purchased recovery rights from various Madoff Fraud victims who had submitted remission claims to the MVF and compelled them to transfer any remission payments they received from the MVF to Fulcrum.

26. Fulcrum also fraudulently compelled the claimants whose Madoff recovery rights it had purchased to submit false disclosures to the MVF, concealing the amounts Fulcrum

paid for those recovery rights.   As explained above, to prevent MVF claimants from receiving duplicative recoveries, the Regulations and MVF Plan of Distribution require (i) MVF claimants to report all collateral recoveries received, including proceeds from the sale of any Madoff recovery rights or MVF claims, and (ii) the MVF to reduce remission payments by the amount of such  collateral recoveries.  Compliance with these requirements would have resulted in Fulcrum obtaining substantially smaller remission payments from the MVF.  Therefore, as a result of Fulcrum's fraudulent concealment of these collateral recoveries, the MVF made inflated remission payments to the victims, which they in turn paid over to Fulcrum.

A. **Fulcrum Purchased Madoff Recovery Rights From MVF Claimants**

27.   Through a number of transactions during 2014-2019, Fulcrum purchased Madoff claims and MVF recovery rights from multiple victims of the Madoff Fraud.

28.   Luxalpha SICAV ("Luxalpha") was a Luxembourg-based investment fund that operated as a Madoff Securities feeder fund, and its underlying investors suffered losses as a result of the Madoff Fraud.

29.   Among the persons and entities who were beneficial owners of Luxalpha shares were:  (i) Carac, a public pension fund based in Paris, France; (ii) a group of investors in a fund called "Fondaco Absolute Return," which was managed by Fondaco SGR S.p.A. ("Fondaco"), an institutional asset management company based in Torino, Italy (the "Fondaco Investors"), including Compagnia di San Paolo ("CSP"), a foundation based in Torino, Italy; and  (iii) a group of individuals located in France, named Bruno Plancke, Michel Plancke, Olivier Plancke, Thierry Plancke, and Virginie Reant Plancke (the "Planckes").

30. In February, March and April 2014, Carac, the Fondaco Investors, and the Planckes (the "Claimants") each filed claims with the MVF seeking remission payments for losses they claimed to have incurred as a result of their investments in Madoff Securities through Luxalpha.

31. Fulcrum subsequently purchased the Claimants' Luxalpha shares and attendant rights and MVF claims.  Specifically, Fulcrum purchased Fondaco's Luxalpha shares in July 2014, Carac's Luxalpha shares in October 2014, and the Planckes' Luxalpha shares in January 2019.  Fulcrum immediately resold the Fondaco and Carac shares to third parties, but purported to retain rights to most of the Claimants' MVF remission payments.  In particular, Fulcrum entered into Purchase and Sale Agreements ("PSAs") with Carac, CSP, and the Planckes pursuant to which Fulcrum purported to acquire their rights to receive remission payments from the MVF.

32. Fulcrum knew that, pursuant to the Regulations and the Plan of Distribution, Fulcrum was not eligible to receive remission payments directly from the MVF because Fulcrum was not a Madoff Fraud victim and had merely purchased the Claimants' Luxalpha shares and attendant rights and MVF remission claims.  Accordingly, as part of the PSAs, Fulcrum required Carac, CSP, and the Planckes to transfer any amounts they received from the MVF to Fulcrum.  Specifically, as part of the PSAs, Carac, CSP, and the Planckes agreed that they would retain no beneficial interest in any distributions they received from the MVF, that they would hold any such distributions as agents of Fulcrum, and that they would deliver any such distributions to Fulcrum within five days of receipt.

B. **Fulcrum Fraudulently Directed the Claimants to Submit False Claims or Statements to the MVF in Order to Obtain Inflated Remission Payments**

33. Fulcrum knew that, pursuant to the Regulations and Plan of Distribution, the Claimants were required to report to the MVF all collateral recoveries they received,

10

including proceeds from the sale of their Luxalpha shares and MVF remission claims, and that the MVF would reduce any remission payments to the Claimants by the amount of the collateral recoveries they reported.

34. For example, in internal emails in or about August 2017, Fulcrum representatives circulated and discussed the MVF's August-December 2017 Update reiterating that collateral recoveries, which reduce remission payments, include "any proceeds [claimants] received as a result of the sale or assignment of [their] claim in either the bankruptcy or MVF proceedings."

35. To ensure that the MVF would not reduce the Claimants' remission payments by the amounts Fulcrum had paid the Claimants for their Luxalpha shares and attendant rights and MVF remission claims, Fulcrum acquired the right to control Carac's, CSP's, and the Planckes' communications with the MVF and fraudulently required them to conceal this collateral recovery information from the MVF.

36. Specifically, under the PSAs, Carac, CSP, and the Planckes granted Fulcrum irrevocable power of attorney with respect to the remission claims and authorized Fulcrum to act in each of their names, places, and steads with respect to those claims. Further, Carac, CSP, and the Planckes agreed to deliver all correspondence they received from the MVF to Fulcrum and take all actions requested by Fulcrum to effectuate the terms of the PSAs.

37. From October 2016 through October 2022, the MVF sent multiple CRU Notices to the Claimants requesting that they identify all compensation received from any source other than the MVF, including proceeds from the sale of Madoff claims. Pursuant to the PSAs, Fulcrum received Claimants' copies of the CRU Notices, and fraudulently instructed or otherwise caused the Claimants to submit false CRU responses to the MVF that failed

11

fully to disclose the amounts the Claimants had received from selling their Luxalpha shares and related rights and remission claims to Fulcrum.

38. For example, in September 2017 and May 2019 pursuant to the PSA and at Fulcrum's behest, Carac submitted two CRU responses to the MVF that falsely represented that Carac had received no collateral recoveries, when in fact it had received significant sales proceeds from Fulcrum.

39. Similarly, from February 2017 through July 2019, pursuant to the PSA and at Fulcrum's behest, CSP submitted four CRU responses to the MVF that falsely failed to disclose the full amount that CSP had received from Fulcrum for its Luxalpha shares and related rights. CSP stated that it had sold its remission claim to an unidentified secondary market player for a specified amount, but this amount reflected only the smaller amount CSP received from Fulcrum for the purported sale of its remission rights, rather than the total proceeds CSP received from Fulcrum for the sale of its Luxalpha shares and related rights.

40. In or about August 2017, representatives of CSP encouraged Fulcrum to reach out to the MVF to confirm whether the sales proceeds Fulcrum had received constituted collateral recoveries, but Fulcrum refused to do so, and instead insisted that CSP submit false disclosures to the MVF concealing the Fondaco Investors' sale of their Luxalpha shares and attendant rights to Fulcrum.

41. From February 2017 through July 2019, the Fondaco Investors other than CSP likewise submitted twenty-eight CRU responses to the MVF that falsely represented that these investors had received no collateral recoveries, when in fact they had received significant sales proceeds from Fulcrum.

42. From August 2019 through October 2020, pursuant to the PSA, and at Fulcrum's behest, the Planckes submitted twenty CRU responses to the MVF that falsely represented that the Planckes had received no collateral recoveries other than those they received from a financial intermediary in connection with a litigation settlement, when in fact they had received significant additional proceeds from Fulcrum for the sale of their Luxalpha shares and attendant rights and MVF remission claims.

43. Fulcrum knew that the aforementioned CRU responses that the Claimants submitted to the MVF were false.

44. Fulcrum's misrepresentations concerning collateral recoveries were material to the MVF's and DOJ's remission payment decisions. As noted above, prior to each MVF distribution, MVF claimants have been required to certify under penalty of perjury to the truthfulness and accuracy of their CRU responses as a condition precedent to receiving a remission payment. Had Fulcrum disclosed, or caused the Claimants to disclose, the amounts the Claimants had received from Fulcrum for the sale of their Luxalpha shares and attendant rights and MVF remission claims, the MVF would have reduced the Claimants' respective remission payments by the amount of those sales proceeds.

45. As a result of Fulcrum instructing or otherwise causing the Claimants to submit false collateral recovery information as described above, the MVF distributed remission payments to the Claimants that they were not entitled to receive. Pursuant to the PSAs, Carac, CSP, and the Planckes then transferred the amounts they had improperly received from the MVF to Fulcrum.

## CLAIMS FOR RELIEF

### FIRST CLAIM

**Violations of the False Claims Act: Presenting False Claims for Payment**
**31 U.S.C. § 3729(a)(1)(A)**

46. The Government incorporates by reference paragraphs 1 through 45 above as if fully set forth in this paragraph.

47. The Government asserts claims against Fulcrum under 31 U.S.C. § 3729(a)(1)(A).

48. Fulcrum knowingly, or acting with deliberate ignorance or reckless disregard for the truth, presented, or caused to be presented, false or fraudulent claims for payment or approval to the MVF in violation of 31 U.S.C. § 3729(a)(1)(A). Specifically, Fulcrum fraudulently instructed or otherwise caused the Claimants to submit false claims to the MVF that failed to identify collateral recoveries the Claimants had received from Fulcrum for the sale of their Luxalpha shares and attendant rights and remission claims to the MVF.

49. As a result of these false or fraudulent claims, the MVF made inflated remission payments to the Claimants to which they were not entitled. Carac, CSP, and the Planckes then transferred these amounts they had unlawfully received from the MVF to Fulcrum.

50. By reason of the false or fraudulent claims or statements that Fulcrum knowingly presented, or caused to be presented, for payment or approval, the Government has been damaged in a substantial amount to be determined at trial, and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

### SECOND CLAIM

**Violations of the False Claims Act: Use of False Statements**
**31 U.S.C. § 3729(a)(1)(B)**

51. The Government incorporates by reference paragraphs 1 through 50 above as if fully set forth in this paragraph.

52. The Government asserts claims against Fulcrum under 31 U.S.C. § 3729(a)(1)(B).

53. Fulcrum knowingly, or acting with deliberate ignorance or reckless disregard for the truth, made, used, or caused to be made or used, false records or statements that were material to false or fraudulent claims for payment submitted to the MVF. Specifically, Fulcrum fraudulently instructed or otherwise caused the Claimants to submit false disclosures to the MVF that concealed collateral recoveries the Claimants had received from Fulcrum for the sale of their Luxalpha shares and attendant rights and remission claims to the MVF.

54. As a result of these false or fraudulent disclosures, the MVF made inflated remission payments to the Claimants to which they were not entitled. Carac, CSP, and the Planckes then transferred these amounts they had unlawfully received from the MVF to Fulcrum.

55. By reason of these false records or statements, the Government has been damaged in a substantial amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false record or statement.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, the Government, requests that judgment be entered in its favor as follows:

1. On the First and Second Claims for relief (violations of the FCA, 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B)), a judgment against Fulcrum for treble the Government's damages, in an amount to be determined at trial, plus a civil penalty in the maximum applicable amount for each violation of the FCA by Fulcrum;

2. An award of costs incurred by the Government pursuant to 31 U.S.C. § 3729(a)(3); and

      3.      Such further relief as is proper.

Dated: New York, New York
       September __, 2023

                              DAMIAN WILLIAMS
                              United States Attorney for the
                              Southern District of New York

                     By:      /s/ Pierre G. Armand
                              PIERRE G. ARMAND
                              Assistant United States Attorney
                              United States Attorney's Office
                              86 Chambers Street, 3rd Floor
                              New York, NY 10007
                              Tel: (212) 637-2724
                              Email: Pierre.armand@usdoj.gov
                              *Attorney for the United States of America*